Argument not to exceed 15 minutes to be shared by the appellants and 15 minutes for the appellees, Miss Sonia winner. You may proceed for the appellants. Thank you. Please the court. My name is Sonia winner and I'm here on behalf of the appellants who are defendants and the proceedings below. I've asked to save one minute for rebuttal. Yes. This appeal involves the invention by a federal district court of a new kind of class action that is not authorized under Rule 23 of the federal rules of civil procedure. The district court purported to invoke Rule 23 in creating and certifying what it referred to as a negotiation class. It is not a class of persons who are in the words of Rule 23 certified to sue or be sued. It is strictly a court sanctioned organization that is authorized to negotiate on behalf of its members. I'd like to start by talking about Rule 23 itself. Rule 23 a big which sets the prerequisites for any class action begins by saying that quote one or more members of a class may sue or be sued as representative parties on behalf of all members. If certain specific criteria are met. Rule 23 be then goes on to identify the three specific types of class actions that are permitted. Each of the three is again defined in terms of class. Could I interrupt. I think we're pretty familiar with what the claims are in this in this case. I'm just curious. I'm not specifically addressing this question of the standing, but I'm just curious. Why do you care if you don't have to negotiate with this group. You can just sit out if you do negotiate with the group and you settle it then presumably you're happy with everything that that went on. So why do you care. Well, we care for a number of reasons. One, your honor, is that this certification dedicates important judicial and other resources to something that is ultimately not valid and will divert everybody's time and attention. Other ways, you simply cannot participate. And then your attention is not diverted at all. Yes, but the attention of the court is certainly diverted. There are also findings that are made on what are potentially very important substantive issues in this litigation, with which we do have a grievance. We do severely disagree. And those are left to stand. I thought the district judge said that what he said in his order was not going to be binding or preclusive in any other situation in this case. Yes, he certainly did say that. Now, of course, he cannot preclude other courts from paying attention to what he said. And in fact, I think that that statement actually goes to the heart of what is wrong with this decision. Because Rule 23 only authorizes the certification of classes that are eligible to sue or be sued. And by making that statement, and this is on pages six to seven of the court's order, it said, This order and the accompanying memorandum are not intended to serve as a precedent in support of or opposition to any motion for class certification of any type pursued in any court on opioid-related matters. Now, that's a pretty remarkable statement for a federal court to say is that basically nobody should ever pay any attention to what I say, because nothing I have said supports the certification of a class in any other case. And basically what the district court was saying there was that it didn't believe that the certification of the negotiation class rested on findings that could validly support a class that was actually certified to sue or be sued. What are the aspects of the order that he did issue, certifying this negotiating class, that you alluded to earlier that were very harmful to you? I'm sorry, Your Honor. Aside from certifying the negotiating class, in the process of doing so, what were the findings of the court, incidental or necessary to that certification, that you contend to be harmful? Well, the district court made a very cursory set of findings that addressed, among other things, on the predominance problem around Rule 23b-3, was addressing issues like what would be required to prove certain RICO claims against us. And we certainly take issue with those findings. They were not based on any evidentiary record or any other kind of record. It was basically the court just reviewing the pleadings and purporting to make these determinations. So I would cite that as an example of the problem. But if he said that it was not going to be binding, if the case did not result in a negotiation that was successful, then obviously you would not be bound by any statement if there should be an effort to have a settlement class certified or litigation class certified, right? You could then contest everything you wanted to contest about predominance or commonality or anything. Theoretically, I could contest that, certainly, Your Honor, and I would contest it very vigorously. On the other hand, that's there. In fact, it's already been cited against us in one motion for class certification that we're having to contend with. I see that my time is up. Yes. Thank you. Co-counsel? Hi, my name is Kevin Russell. I represent the municipal appellants in this case. I'd like to reserve three minutes for rebuttal. Start out with the point that nobody's challenging our standing to bring this appeal, and then start again with the text. So Rule 23a says that the purpose of a class action is to allow the class representatives to sue and be sued on behalf of the class. That's the one thing that this order withholds from them, and that's a critical and, we believe, decisive point. Also standing is irreconcilable with this order. The Supreme Court's decision in Amchem. And in that case, the court not only gave guidance about the degree of judicial inventiveness that's permitted in light of the Rules Committee process, but also specifically held that a settlement-only class action was in conflict with the rules. And they said so because it left the class representatives disarmed in the negotiations, because they could settle the class, but not realistically threaten class litigation if the defendant's negotiation position was not reasonable. The negotiation-only class here is not materially different. The class representatives go into these negotiations disarmed, just as in Amchem, but it's even worse here, because the absent class members in Amchem had an opportunity to opt out of the final settlement after seeing it in all its terms. We will not have that opportunity here, because we are forced to make an opt-out decision based on very incomplete information before the negotiations even began in earnest. But your clients are these five or six cities in Ohio, right? That is correct. And they could have opted out, right? Yes. So it seems unseemly now to be challenging something that you didn't take advantage of your opportunity to opt out. Well, I will say two things about this. Amchem makes absolutely clear that parties, that class members who did not opt out can appeal from a class certification order. They were the petitioners in Amchem. But with respect to why it's fair for us to do that, why the Supreme Court was right to allow that in Amchem, you know, we have the right to enjoy the benefits of a proper class action that is conducted in compliance with the rule. And we think that this one doesn't. We think that this one seriously disadvantages absent class members in order to provide defendants strategic benefits that they demanded as a condition for engaging in serious negotiations. And we just don't think that the district court has the power to eliminate opt-out rights and create a substitute set of what it said were significant protections. Setting aside whether or not that's true or not, it is just not the district court's job to rewrite the rules in a way that seemed to it better suited to achieving a settlement. And that's a major lesson from Amchem, which the district court here ignored. The fact that the defendants are objecting to this suggests that the defendants are not actually benefited by this negotiation class, doesn't it? Well, with respect, I don't think that's true. I think Ms. Winter just described that the areas, the ways in which they view themselves disadvantaged and it's diverting resources from litigation and the like, they don't dispute that this mechanism disarms the class representatives in the negotiations. They don't dispute that it gives them these other benefits because it's indisputable because the Supreme Court recognized it in Amchem. Now, I will say that this case is different than Amchem in that the reason that there was a settlement-only class in that case is because the class didn't meet the requirements under Rule 23A and B for a litigation class. The district court here specifically found that those requirements were met. That's disputed here, but you're not going to be able to uphold this order without agreeing with the district court on that, which then just raises the question, why didn't he just certify a litigating class? The only reason he gave for this invention was the need for the defendants to have a fixed class at the outset to negotiate with. But that's accomplished all the time through a litigation class. So what's wrong with that? The district court didn't give any reason at all, and you could reverse on that green ground at all. You can get hints in the opinion that the court was worried that if he tried to certify a litigating class, more defendants would object more vociferously. But that can't possibly be a sufficient justification for creating a whole new form of class action litigation. And if it is, this court is going to see a lot more of these cases because what defendant isn't going to demand these concessions if simply demanding them is all it takes to get them? A class counsel says this won't become common because the voting mechanism is ill-suited for other kinds of litigation. But there's nothing in the rules. There's nothing in the case law. There's nothing even in the concept of a negotiation class that requires those specific substitutes for an opt-out right. And I suppose this court could roll up its sleeves and develop a body of case law about when negotiation classes are permitted and what substitute requirements are required. But it can't help. It won't have any help from the language of the rules, and it won't have the benefit of the very extensive deliberative process. Would your problems be satisfied if there was an opt-out opportunity after the negotiation reached a settlement? With respect to this, I think it would. So we have these other arguments about the need for subclasses. But assuming that was met, if we were allowed an opt-out right at the end, I think that would be satisfied. But that is simply to eliminate the negotiation class, because that's all it really does, is eliminate that opt-out right. Thank you. Thank you. Counsel for Appellee? Good morning, Your Honors. Samuel Issacharoff for the Appellees. May it please the Court. The heart of this appeal is that the negotiation class is never allowed. All the technical details aside, that's what both appellants claim. And they have two basic arguments as to why that is. The first is that it is not in the text directly in any fashion. And the second is the language of sue or be sued in 23A. I will address those in turn. As to the question of it is not in the language of the rule, the appellants have a terrible problem with the court in AmChem called the stock device of settlement classes. Settlement classes were not in the rules until 2018. Mr. Russell just said that AmChem found that settlement classes were in conflict with the rules. That is absolutely false. What AmChem found was that a settlement class was an appropriate mechanism under certain circumstances and then went on to say that the manageability prong of rule 23B3 would not have to be satisfied there. In fact, this is an example of judicial inventiveness, if you will, because if these rules that had if this practice of settlement classes had not been in the rules at all prior to 2018, it must have percolated up from the lower courts. The and that's what was I'm sorry, but that's what was affirmed in AmChem itself. So how does how does the negotiation class work with regard to the rules? Well, first of all, the Chamber of Commerce amici say that it is prohibited because the adjudication language of rule 23B3 incorporates settlement and therefore that's part of the overall rules language themselves. That was rejected by this court in the Whitlock case, which found that settlement was not part of an adjudicative process. And then the question is, well, how do you know what is in the rules and what is not? Appellants say that Whitlock and particularly the defendants say Whitlock at page 1091 says that you can only have a class certified for trial or settlement. Whitlock says nothing about that point. And at page 1091, the word trial does not appear at all. So this the attribution made twice in their brief doesn't work there. Mr. Isikoff, could I interrupt you to ask you what was inadequate about either a litigation class or a settlement class for purposes of this proceeding? Why did he have to invent a new negotiation class? Because there are 34,000 municipal and county entities in the United States, and it is well established through judicial practice that the plaintiffs do better if they can offer global peace to the defendants. And the problem with the settlement class is that you have self-appointed counsel who go and negotiate a settlement and then class members are given it on a take it or leave it basis. You can either opt out or you're stuck with it. This is a mechanism that would allow the class members to participate directly in the settlement process and agree to bind themselves in a way that maximizes their leverage vis-a-vis the defendants. This is the reason that this started to percolate up through some state courts. It's the reason that it was adopted by the American Law Institute in 2010. And that was the reason that it's being used here. It is a mechanism designed for an unusually, in fact, I would submit uniquely sophisticated group of entities that are accustomed to working through democratic processes of voting. That's why it was selected here. That's the litigation class. So the bottom line is it's preferable here because the plaintiffs are more likely to do better? Well, that's what the class mechanism is for. It's for the plaintiffs to be able to do better. And so that's why we move forward. If the plaintiffs are able, if it's structured in a way that more likely than not, the plaintiffs will do better. I was surprised that neither Ms. Winter nor Ms. Russell took the inverse of that and said that they were the problem with this is it's set up to favor the plaintiffs over the defendants. So is that true or not true? It is to empower the plaintiffs in negotiation. And as a result, it has the paradoxical effect of helping defendants because they know with whom they are negotiating at the time of settlement. But Ms. Winter does claim that it adversely affects her clients. I don't we don't dispute that. We are class counsel. The reason we move for this was because we thought it would be beneficial for the class. But Mr. Russell claims that it adversely affects the plaintiffs because it it gives the defendants more power. How do you deal with that? I think that's just flat wrong. They this doesn't give defendants power. It gives them the capacity to know with whom they are negotiating and thereby get the plaintiffs the maximum dollars. So they don't have to hold back money in case of strategic opt outs. Don't the defendants know that the class representatives and the class counsel will be inclined to agree to a settlement and therefore the defendants can argue for a lower settlement? If your honor is referring to the to the conflict in the position of class counsel and class members, that's an assertion that sweeps so broadly is to take in every class action. Every class action is a species of what's called agency costs. There are agents who may have divergence incentives. That's the reason that the power in this particular class is put in the hands of the class members themselves. They have the voting authority to determine whether or not to accept any settlement and whether to carry it forward to the court through the normal rule 23 processes. What's more, neither of the appellants mentioned that at the conclusion of the negotiation class process, if there ever is one, all the mechanisms of rule 23 are still in place and all class members are protected through the courts needing to find that the settlement is fair, adequate and reasonable. And that the all the strictures of rule 23 have been met, including the adequacy of representation, which is a common feature of the challenged conclusion of any settlement process. I want to go back to sort of the fundamentals here because I'm you can probably tell from my questions I'm troubled by this. All of you are describing this as an example of judicial inventiveness. And so I'm asking you what what concern. Do you think we should or shouldn't have about inventiveness when by definition, you're admitting it's it's empowering the plaintiffs. To me, empowering the plaintiffs in negotiation means it's giving them. And I'll call it an advantage if that's the right word. It's giving them an advantage that they didn't have. So isn't the proper role of a court to be creating a mechanism that empowers one side in the case, as opposed to it going through the rulemaking process where the pros and Judge McKee, I think that the question gets to the heart of why you have a class action. I think every class action makes the plaintiffs more powerful as a group. Many courts have spoken about the fact of small value class actions where in the colorful words of Judge Posner, only a lunatic would sue over $30 in a consumer case. So every case that is a small value, for example, is one that has absolutely no value unless joined together at through the class mechanism. Now, the question then goes, your question then goes to whether this fits within the processes that have been adopted by the rules drafters. In our brief, we refer to Rule 23D as a source of authority, and neither appellant even mentioned Rule 23D in its reply. Rule 23D empowers the court to innovate, to conduct the action, and Rule 23D1B triple small I says that the court's notice may be designed to give class members opportunity to signify whether the representation is fair and adequate. And here's the critical language or otherwise come into the action. So that is an open-ended invitation to create mechanisms that draw class members into participation in the action. When your argument of 23D just swallow 23A and B? Absolutely not, Your Honor. 23A, including the sue or be sued language, just sets out the basic framework of the class action. And the basic framework of the class action is that there must be numerosity, typicality, and so forth. Note the language of sue or be sued that both appellants rely on isn't simply the capacity of class actions to include where appropriate defendant class actions. And in the 50-plus years of modern Rule 23, it's never been used for any other purpose whatsoever, and neither appellant cites any case law on that whatsoever at all. With regard to the 23A and B, those sets up the types of class actions, but it doesn't set up the mechanisms that can be used to further that. And in particular, I would direct the court's attention to 23C4, which was the basis of the certification of the Controlled Substances Act claims. And there, the language of the rules is when appropriate, which is broad discretionary language. And in the Martin case, which is the leading case from this court interpreting Rule 23C4, which neither appellant cited in its opening brief, and we contend thereby waived any challenge at all to 23C4 ruling. But in the Martin case, the court spoke about the needs for efficiency and effectiveness in what it termed the object of the resolution of the case. Now, the word resolution appears nowhere in Rule 23. The court said the efficient resolution is the aim of the class action mechanism. And so I don't think that this is a question that the Rules Committee did not address the particular mechanism. I think that there is a mechanism for settlement classes. This is a first step in that direction that the court is taking in order to allow more direct participation by the class members. Could you address the predominance requirement for a B3 class action? I'm having trouble understanding why the items that are certified here, the RICO claims and the CSA issues, are predominating. Yes. First of all, the CSA issues, Judge Moore, are certified only under Rule C4, not under B3. And so the guidance for how that predominance works there is taken from the Martin case. And in the Martin case, the district court had denied B3 certification. This court rejected 23F review of that. And then this court upheld seven different issue class determinations on the predominance of those questions under what it termed the broad view of 23C4. With regard to 23B3, each of the defendants, each of the appellants says, well, there are individual issues there. But this court, again in Martin, said that predominance is not a question of only whether there are individual issues remaining, but of the centrality of the common issue before the court. And in the RICO case, as in the RICO claim, as in the Torres case in the Fifth Circuit that we cite to, these are uniquely situated under the leading Supreme Court authority of bridge for class-wide treatment. The district court, I'm sorry, the Martin court relied heavily on the Supreme Court's opinion in Tyson Foods, which set out that you could have predominance even if there are multiple individual issues. And the six cities appellants do not address Tyson Foods at all. And the defendant appellants address it only for an irrelevant secondary point and not for the critical holding on predominance. So I would submit that that is well within this court's reasoning on predominance at this time. I would like to say just one word on the jurisdiction issue. Defendants in their reply brief said that a merits panel does not have to address it because the motions panel addressed the certifiability of the 23F question. In the Blea Farms case, 465F3rd at 658 note 2, this court squarely rejected that argument and said that the merits panel has to address the jurisdictional issue and that that is preserved throughout. Finally, on the appellate standing for the only party that raised the C4 issue, the defendants. Again, this is where the court's questions at the beginning were absolutely germane. If I may finish my sentence that that why do they care? How are they harmed? Whether it's City of Cleveland and Vanguard, City of Cleveland and State of Ohio, all these cases maintain that you must be under compulsion and there must be consequences in order to maintain its appellate standing. They have neither. Thank you very much. Your Honor. Thank you. Rebuttal. Thank you, Your Honor. Thank you, Your Honor. Very briefly. On the issue of C4, the Martin case is certainly the important case here. And what I think the Martin case is very clear in saying is that it does not say that you can have different kinds of class actions under rule C, C4. Ultimately, what the Supreme Court said in AMCAM is that if you want to amend Rule 23, you have to go through the process established under the Rules Enabling Act. The judicial inventiveness to get creative, to create new kinds of classes is not something that is permitted. It's not permitted under Rule 23D or anywhere else. Thank you, Your Honor. Thank you. Thank you, Your Honors. I think it's notable the answers that we didn't hear today. Judge McKeague, you asked why a litigation class wasn't good enough. I made the point in my opening. You didn't get an answer to that. You're not going to find one in the district court's opinion, and you didn't get one from class counsel today. What you did hear was class counsel explaining why, in their view, it is better for plaintiffs essentially not to allow dissenters to opt out of class action settlements. And no doubt it is true that it is better for class counsel. They get more fees doing that. And it's better for some of the members of the class. But certainly, it is not better for the class members who reach the reasonable determination that this particular settlement is not in their best interest, which is something that's particularly important to preserve in a case like this where the absent class members are governmental entities that have an obligation to protect the interests of their constituents, regardless of what other jurisdictions may think best suits theirs. The other thing I would point out is that, at best, this argument shows that there is a reasonable debate about the mix of pros and cons and benefits and costs of plaintiffs absent class members and defendants through the creation of this new procedure. But this is exactly the kind of thing that the district court and this court, with respect, are not as well suited to address as the Rules Committee process, where, in deciding a question of this magnitude, the committee would hear from hundreds of practitioners, judges, scholars, and would debate the pros and cons of this over the course of months or even years. We're going to have debated this for all of half an hour this morning. This is simply not the kind of thing that should be done through a case-by-case process. Do you know offhand whether the Rules Committee has been presented with the question of negotiation classes? Are there any proposed rules changes or comments or interpretations pending? I'm sorry, I don't know the answer to that question. I certainly haven't heard of any, and the class representatives certainly haven't cited any in their brief. But this wouldn't be surprising if they had, because this is the sort of thing they do all the time. They regularly get people coming in and saying, look, a different set of procedures would provide better protection for plaintiffs or a better balance of interests. And they are the ones who are best suited to address those kinds of questions. And then let me end with the text, because the one thing I didn't hear was Mr. Zakharoff explain why this class is entitled to sue or be sued on behalf of the absent class members. He hinted that maybe we just should think that it doesn't mean anything. And he made arguments about why Rule 23A doesn't have to be complied with in this case, because you can sort of find her C-4 or some provision of B. I would say, you know, if this court holds that, holds that compliance with Rule 23A is not actually mandatory for every class action, and at the same time authorizes negotiating classes, this court will have created a sea change in class action law. And that's something the court ought not to do. Would your point apply to a litigation class in this context, too, though, that the litigation class would not qualify? No, because the litigation class would be suing on behalf of the absent class members. Thank you. Thank you. Thank you all for your argument. The case is a fascinating case and it will be submitted and you may disconnect from the courtroom. Thank you. Thank you, Your Honor.